### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

| | | |
|---|---|---|
| **CAROL McCONNELL,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WEST POINT HOTEL GROUP, LLC,** | ) | _____ |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S COMPLAINT

## I.     INTRODUCTION

Plaintiff, Carol McConnell ("Plaintiff"), files this Title III, ADA action, pursuant to 42 U.S.C. § 12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to maintain practices, policies, and procedures necessary to afford Ms. McConnell and all others similarly situated the opportunity to receive the same services in the same manner with the use of her service animal as the services that non-disabled individuals receive when at Defendant's place of public accommodation.  In Count Two, Plaintiff seeks to enjoin the Defendant's use of the facilities and services Defendant provides at its hotel/inn to provide full and equal enjoyment of the goods and services to the disabled that require the use of service animals. In Count Three, Plaintiff alleges that Hampton Inn violated the Mississippi Support Animal Act (Mississppi Code Section 43-6-151 et. seq.) by denying Ms. McConnell the right to bring her service animal onto the premises of Hampton Inn.

## II.    JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.    Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.    This Court also has supplemental jurisdiction over the Mississippi Support Animal Act since it arises from the same set of facts.

3.    Venue is proper in this Court, the United States District Court for the Northern District of Mississippi, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Mississippi.

4.    Plaintiff, Carol McConnell, suffers from diabetes and glaucoma. As a result of these impairments, Ms. McConnell's vision is limited, and she has little to no peripheral vision. Because of these impairments, Ms. McConnell uses a trained dog as a service animal for guidance, stability and mobility. Ms. McConnell is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *see also,* 28 C.F.R. § 36.104.

5.    At all times, Plaintiff had direct control over her service animal through the use of voice commands, a harness (or colar) and a leash. In addition, Plaintiff's service animal is housebroken.

6.    Defendant, West Point Hotel Group LLC ("Hampton Inn") is a corporation that is both registered to do business and is conducting business within the State of

Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief based on Defendant's publicly available information, Defendant "owns" and/or "operates" the hotel/inn located at 1281 Highway 45 Alternate South, West Point, Mississippi 39773. The Hampton Inn is a commercial facility in that the unit is intended for nonresidential use and affect commerce. 42 U.S.C. § 12181 (2)(A). Moreover, the establishment is a place of accomodation which qualifies as places of public accommodation pursuant to 42 U.S.C. § 12181(7).

7. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, Defendant's establishment is a place of public accommodation in that it is a place of lodging offering guest rooms for stays that are short term in nature. Accordingly, it is covered by the ADA and must comply with the Act.

8. Defendant's hotel itself is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(a), which provides:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce:
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor.

In particular, the hotel rooms are a "place of lodging", pursuant to 28 C.F.R. § 36.104, which provides:

[3]

*Place of public accommodation* means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories –

(1) Place of lodging, except for an establishment located within a facility that contains not more than five rooms for rent or hire and that actually is occupied by the proprietor of the establishment as the residence of the proprietor. For purposes of this part, a facility is a "place of lodging" if it is –

    (i) An inn, hotel, or motel; or

    (ii) A facility that –

        (A) Provides guest rooms for sleeping for stays that primarily are short-term in nature (generally 30 days or less) where the occupant does not have the right to return to a specific room or unit after the conclusion of his or her stay; and

        (B) Provides guest rooms under conditions and with amenities similar to a hotel, motel, or inn, including the following –

            (1) On- or off-site management and reservations service;

            (2) Rooms available on a walk-up or call-in basis;

            (3) Availability of housekeeping or linen service; and

            (4) Acceptance of reservations for a guest room type without guaranteeing a particular unit or room until check-in, and without a prior lease or security deposit.

**9.**    Plaintiff's stay, as stated herein, at the hotel establishes her conformity to the elements of 28 C.F.R. § 36.104, because the hotel was rented to her for a short-term stay, (less than 30 days); Upon Plaintiff's arrival at Hampton Inn, she was

[4]

required to check in at the front desk with an employee of Hampton Inn; Plaintiff had the opportunity to have housekeeping services during her stay; Plaintiff did not have the right to return to her specific room after she checked-out of her hotel room at the front desk; the services provided were similar to other hotels or motels in that there was onsite employees and a reservation system, as well as reservations accepted without guaranteeing a particular room until check–in and without a prior lease; and housekeeping or linen service was available.

10. All events giving rise to this lawsuit occurred in the Northern District of Mississippi and the Defendant is a citizen thereof.

11. Plaintiff Carol McConnell travels to West Point and, more specifically, the Golden Triangle region in particular for both pleasure and for business. She finds that West Point sits in the heart of the Golden Triangle region and is convenient for her business travels. Ms. McConnell also enjoys staying in West Point because she enjoys the relaxing and laid-back environment that West Point has to offer. More specifically, Ms. McConnell enjoys staying at Hampton Inns during her travels and particularly this Hampton Inn in West Point, which is the subject of this action, due to its luxurious rooms and other amenities at a reasonable price. Ms. McConnell is also a Hilton Rewards (Platinum) Card holder which entitles her to points which can be redeemed for free nights at Hampton Inns. Ms. McConnell specifically and definitely intends to continue going to Hampton Inn when she travels to the Golden Triangle area of Mississippi including West Point. Ms. McConnell does not know exactly when she will go back to Hampton Inn because she has not planned out every trip nor

every meal for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Ms. McConnell definitely intends to return to Hampton Inn, however, not only to stay overnight and avail herself of all of its services, but also to see if Hampton Inn will become ADA compliant. Ms. McConnell will continue to return even after the establishment becomes ADA compliant because Hampton Inn is her choice of hotels when staying and travelling in the Golden Triangle region of Mississippi, including West Point.

12. Because of the denial of Ms. McConnell's requested reasonable accommodation as stated in paragraphs 19, 20 and 44, and throughout this Complaint, Plaintiff has been denied services, excluded from participating, and otherwise treated differently than individuals who are not disabled and who do not require the use of service animals on the basis of her disabilities and because she requires the use of a service animal.

13. Plaintiff accordingly, has standing to pursue this case because (1) she is disabled, pursuant to the statutory and regulatory definition; (2) Defendant's hotel/inn is a place of public accommodation, pursuant to the statutory and regulatory definition; and (3) Plaintiff has been denied full and equal enjoyment of the Defendant's goods and services on the basis of her disabilities and a result of her requiring the use of a service animal. As described more fully in paragraphs 11,

[6]

88, 89 and 90, there exists a genuine threat of imminent future injury.

### III.    FACTUAL BACKGROUND

14. As stated herein, Defendant is a hotel/inn that offers an array of services, including, lodging, guest rooms, fitness center, business center, pool and breakfast to its customers, and owns and operates the Hampton Inn that is the subject of this action.

15.  Hampton Inn provides these services at its facility through its employees.

16. Among those services, Hampton Inn provides guest rooms for overnight lodging at a fair and reasonable price.

17. Ms. McConnell is unable to receive the same services and the same opportunities as other individuals without disabilities, because Ms. McConnell has limited vision and requires the use of a service animal, which Hampton Inn would not allow Ms. McConnell to have in her guest room at times during her stay. More specifically, Hampton Inn has a "no animal" policy for its facility and guest rooms.

18. Once the hotel manager discovered that Ms. McConnell had a service animal in her room, Hampton Inn and the Manager required Ms. McConnell to vacate her guest room. This prohibits Ms. McConnell from having the same opportunities as other prospective customers solely on the grounds that she has a disability which requires the assistance of a service animal.

19. On or around November 16, 2017, and after being informed that she could not maintain her service animal within Hampton Inn's guest room, Ms. McConnell

requested a reasonable modification from Hampton Inn that was necessary to afford her the full and equal opportunity to receive the same services as the services that are offered to individuals without disabilities and who do not require the assistance of service animals that receive services offered at Hampton Inn.

20. Ms. McConnell's requested modification was for Hampton Inn to allow Ms. McConnell to bring her service animal onto the establishment and, among other places, in her guest room.

21. This requested modification is not asking Hampton Inn to design new and/or construct additional rooms nor does it fundamentally alter the nature of Hampton Inn. Instead, this is a reasonable request that Ms. McConnell is requesting Hampton Inn to provide utilizing its existing readily available rooms and services that are currently offered to the rest of the public that do not require the assistance of service animals.

22. Moreover, federal regulations and the Department of Justice recognize that the use of service animals to be reasonable. "Generally, a public accommodation shall … permit the use of a service animal by an individual with a disability". 28 C.F.R. Section 36.302(c)(1); see also, Johnson v. Gambrinus Company/Spoetzl Brewery, 116 F.3d 1052 (5th 1997).

23. In addition thereto, "[i]ndividuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a place of public accommodation where members of the public, program participants, clients,

[8]

customers, patrons, or invitees, as relevant, are allowed to go. 28 C.F.R. Section 36.302(c)(1).

24. On or around November 16, 2017, Hampton Inn denied Ms. McConnell's requested reasonable modification.

25. When Congress enacted the Americans with Disabilities Act, Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those inequalities that are inaccessible to vision-impaired persons who require the assistance of a service animal.

26. "Furthermore, the legislative history of Title III makes clear that Congress concluded that it is a reasonable modification for places of public accommodation with animal restriction policies to allow individuals with disabilities full use of service animals." Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1061 (5th Cir. 1997). "The legislative history of the ADA contains many statements regarding the use of service animals in places of public accommodation." Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1061 (5th Cir. 1997).

27. Hampton Inn provides services to the public in which it provides lodging, guest rooms and other services to the public. Specifically, Hampton Inn provides guest room and other accommodations to individuals that do not require the assistance of a service animal.

[9]

28. Customers who do not require the use of a service animal receive all services that Hampton Inn offers through a variety of accommodations, advantages, facilities, privileges, and goods, including the following: (a) the ability to access the entire establishment, including the lobby, pool, fitness center, business center and breakfast area and (ii) the ability to stay overnight and access Hampton Inn's guest rooms. By contrast, physically disabled individuals that require the assistance of a service animal are entirely prohibited from being afforded the same level of service to access the establishment and the guest rooms because Hampton Inn has a blanket policy of not allowing animals onto its premises, including service animals.

29. Hampton Inn has long been aware of means by which the services at its hotel could be made accessible to physically disabled individuals that require the use of a service animal. Nevertheless, Defendant has refused to make its facility and the services provided thereat accessible to the disabled that require the use of a service animal. Defendant thus provides accommodations, advantages, facilities, privileges, and services to customers that contain access barriers. These barriers deny full and equal access to Plaintiff, who would otherwise use the services Defendant provides at its hotel and who would otherwise be able to fully and equally enjoy the benefits and services offered at Hampton Inn.

## IV.  PLAINTIFF'S CLAIMS

### ADA, Title III

30. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises

[10]

were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

31. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's hotel and the services that Defendant provides are places of public accommodation in that its provides lodging, among other services, to the general public that are intended for nonresidential use and affect commerce by providing goods and services to the public, as described throughout the Complaint and defined by regulations. Accordingly, Defendant is covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(ii)**
*(Practices, procedures, and policies denying equal benefits)*

**ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

32. Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

33. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

34. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most

[11]

integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble recognizes that disabled individuals historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating the disabled who use service animals "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

35. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

36. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

37. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of

[12]

architectural barriers is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

38. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit, a sister court, explained this clear statutory mandate in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002):

> "*A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both* <u>*tangible barriers*</u> *(emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services*

[13]

*and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

39.  "Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). In its interpretive commentary, the Justice Department has stated as follows:

> *Section 36.302(c)(1) of the final rule now provides that "[g]enerally, a public accommodation shall modify policies, practices, and procedures to permit the use of a service animal by an individual with a disability." This formulation reflects the general intent of Congress that public accommodations take the necessary steps to accommodate service animals and to ensure that individuals with disabilities are not separated from their service animals. It is intended that the broadest feasible access be provided to service animals in all places of public accommodation, including movie theaters, restaurants, **hotels,** retail stores, hospitals, and nursing homes. <u>Johnson v. Gambrinus Co./Spoetzl Brewery</u>, 116 F.3d 1052, 1060 (5th Cir. 1997)*

## **Defendant's Failed Practices and Lack of Policies Are Discriminatory**

40.  Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

[14]

41.    Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled who require the assistance of service animals.

42.    Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015).

43.    As detailed herein, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals who require the assistance of a service animal. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled and/or those that do not require the use of a service animal. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has intentionally discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

44.    Defendant either has no policies, practices, and procedures to make reasonable accommodations or else it does not legally understand its obligations to make request accommodations that are reasonable. The outright ableism identified throughout the Complaint establishes that Defendant has failed to create, adopt,

reasonably accommodate and/or implement ADA Title III compliance policies, procedures, and practices as to reasonable accommodations for Ms. McConnell to have the full and equal use of Defendant's goods and services. Defendant's intentional, illegal denial of Ms. McConnell's requested modification is more specifically explained as follows:

Plaintiff's Requested Modification

a) On or around November 16, 2017 (and prior thereto), Ms. Dunn requested a reasonable modification from Hampton Inn that was necessary to afford Ms. McConnell the full and equal opportunity to receive the same services as the services that are offered to individuals without disabilities and/or those that do need the use of a service animal that receive services offered at Hampton Inn.

b) Ms. McConnell's requested modification was requesting Hampton Inn to modify its no animal policy to allow Ms. McConnell to bring her service animal onto the premises and into a guest room.

c) As indicated throughout this Complaint in both the regulation and the legislative history, this request for a service animal is generally reasonable. Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1060 (5th Cir. 1997).

Defendant's Denial of the Requested Modification

d) On or around November 16, 2017, Hampton Inn denied Ms. McConnell's requested reasonable modification premised on the basis

[16]

that Defendant is not required to modify its policy of no animals within the premises and/or in a guest room.

**e)** More specifically, Defendant's hotel manager, specifically required Ms. McConnell to leave her guest room and the premises in general.

Reasonable Request

**f)** Ms. McConnell's reasonably requested modification is not asking Hampton Inn to construct new rooms or to fundamentally alter the nature of its establishment. Instead, Ms. McConnell made a reasonable request for Hampton Inn to modify its policy by allowing her service animal onto the premises and in a guest room.

**g)** Ms. McConnell's request is reasonable because this request for a service animal is generally reasonable. Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1060 (5th Cir. 1997). Accordingly, Ms. McConnell's requested modification is reasonable because she is asking nothing more than to be provided the same opportunity to stay overnight in a guest room, which is reasonably achievable by modifying Defendant's policy of no animals on the premises and which is required by the ADA.

Necessary Accommodation

**h)** Ms. McConnell's requested accommodation was (and is) necessary to afford her the full and equal opportunity to the goods and services Defendant provides because without the accommodation, Ms.

[17]

McConnell is entirely excluded from the services Hampton Inn offers to the general public. Ms. McConnell is prohibited from receiving those services at Hampton Inn that individuals who do not have impairments and/or do not require the use of service animals are afforded as a direct result of Hampton Inn's denial.

45. Defendant's use of its facility, and its practices at the Hampton Inn located at Highway 45 Alternate South in West Point, Mississippi, literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the goods and services at Defendant's hotel. Those practices include

(a) denying individuals who use the services of a service animal the right to access, among other things, the establishment and guest rooms. Accordingly, Ms. McConnell is denied the same and equal opportunity to fully and equally use the services offered at Hampton Inn as set forth herein in the same way as the non-disabled who do not require the assistance of a service animal.

(b) Defendant's policies, practices, and procedures are conducted without regard to disabled individuals who require the assistance of a service animal.

(c) Defendant, lacks any policies, practices, and/or procedures that ensures the "use" of its facility complies with the ADA;

46. Defendant's use of its facility, and its practices thereat located on Highway 45 Alternate South in West Point, Mississippi, literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the goods and services at

[18]

Defendant's hotel. Those practices include:

   a) Defendant makes its entire establishment inaccessible for use by the disabled who require the use of a service animal by failing to provide them the right to bring their service animal onto the premises and into, among other things, a guest room, which means that Ms. McConnell cannot fully and equally use the entire establishment and guest rooms in the same way the non-disabled do, because the non-disabled who do not require the assistance of a service animal can enjoy and experience all services offered by Hampton Inn;

   b) Defendant lacks any policies, practices, and/or procedures that ensures the "use" of its facility complies with the ADA;

47. As the failure to provide full and equal use of its facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

48. As the failure to provide full and equal use of its facility establishes, Defendant's existing, practice is both in effect and/or explicitly to remediate ADA Title III barriers only upon demand by the disabled.

49. As the failure to provide full and equal use of its establishment establishes, Defendant has no policies, practices, and procedures or else it has failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its facility as individuals

[19]

without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations as described above.

50. As the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA regulations related to service animals.

51. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities that require the use of service animals.

52. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will provide the disabled, including those with the need for service animals full and equal use and enjoyment of its facility; (s) Defendant will remedy its practice of making ADA Title III policy and practices remediations only upon demand by the disabled.

53. As pled above, Hampton Inn "owns" and/or "operates" the facility located on Highway 45 Alternate South in West Point, Mississippi and its goods and services and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged

above.

54. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. Title III of the ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

55. By this Complaint, Plaintiff provides sufficient notice of her demand for an alteration in Defendant's policies, practices, and procedures.

56. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

57. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Denial of Full and Equal Enjoyment

58. Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

59. 42 U.S.C. § 12182(a) provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

60. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42

U.S.C. § 12101(a)(2).

61.  Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals*;" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

62.  In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

63.  The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services,

facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

64.   The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

65.   Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

66.   To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see

[23]

also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

67. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

68. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

69. Plaintiff was denied full and equal access to the Defendant's hotel/inn located on Highway 45 Alternate South, in West Point, Mississippi. Plaintiff specifically and definitely wants to return to the Defendant's hotel/inn to enjoy a luxurious room and amenities at a reasonable price which is in the heart of the Golden Triangle area. More specifically, Plaintiff wants to be afforded the same level of

[24]

service that is offered to non-disabled individuals that do not require the assistance of service animals, and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide Plaintiff that same experience that non-disabled individuals have when it informed Ms. McConnell that she could not have her service animal within the guest rooms which excluded, denied, segregated, and otherwise treated Plaintiff differently than able-bodied individuals who do not require the assistance of service animals, and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at the Defendant's hotel located on Highway 45 Alternate South in West Point, Mississippi.

70. Defendant failed to provide Plaintiff the same experience at its hotel by failing to ensure that disabled individuals that require a service animal are not prohibited from using the goods and services throughout facility including its guest rooms and/or are not otherwise excluded from, denied services, segregated, or otherwise treated differently than able-bodied individuals who do not require the assistance of service animals and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at the Defendant's hotel/inn located on Highway 45 Alternate South in West Point, Mississippi.

71. In its Preamble to the Title III regulation, the Department of Justice recognized that disabled individuals including those that require the assistance of service animals should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just

[25]

as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

72. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)) (ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a).

73. Thus, Defendant's "use" of the hotel and other accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled who require assistance from service animals from the non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

74. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and

[26]

accommodations at Hampton Inn. Such incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" at Defendant's hotel/inn.

75. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court-ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

76. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities that require assistance of service animals constitutes continuous discrimination, and absent a Court-ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's hotel/inn. 28 C.F.R.§ 36.211(a).

77. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

78. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT THREE**
**VIOLATION OF THE MISSISSIPPI SUPPORT ANIMAL ACT**

79. Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

80. Plaintiff is blind and is a mobility impaired person as defined by Section 43-6-153 of the Mississippi Support Animal Act (the "Mississippi Act").

[27]

81.   Section 43-6-155 of the Mississippi Act states "[a]ny blind person, mobility impaired person or hearing impaired person who uses a dog or other animal specifically trained as a guide, leader, listener or for any other assistance necessary to assist such blind, mobility impaired or hearing impaired person in day-to-day activities shall be entitled to the full and equal accommodations, advantages, facilities and privileges of all public conveyances, *hotels*, lodging places, businesses open to the public for the sale of any goods or services and all places of public accommodation, amusement, or resort and other places to which the general public is invited, and may take the dog or other animal into conveyances and places, subject only to the conditions and limitations applicable to all persons not so accompanied.

82.   Moreover, "No person shall deprive a blind, mobility impaired, hearing impaired person, or a support animal trainer of any of the advantages, facilities or privileges provided in this section, nor charge such blind, mobility impaired or hearing impaired person or support animal trainer a fee or charge for the use of the animal."

83.   As set forth in this Complaint, Plaintiff complied with all provisions of the Mississippi Act.

84.   As more fully set forth herein, Hampton Inn denied the use by Ms. McConnell of her service animal in violation of the Mississippi Act.

85.   Ms. McConnell was not allowed to bring her service animal throughout the hotel in violation of the Mississippi Act.

86. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by Defendant.

87. Pursuant to the Mississippi Act, this Court is authorized to enjoin these illegal acts of Defendant

**Plaintiff's Particularized Standing to Pursue an Injunction**

88. Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Defendant's hotel/inn in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq.

89. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and equal access to all of the benefits, accommodations and services offered to individuals without disabilities who do not require the assistance of service animals who access Defendant's hotel/inn. Plaintiff's access was inhibited by each of the described actions of Defendant detailed in this Complaint, which remain part of Hampton Inn in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

90. Plaintiff has definite plans to return to Defendant's hotel/inn in the future to stay overnight and receive other related services at Hampton Inn as described in this Complaint. Plaintiff will return to Hampton Inn within the next few months not

only to stay overnight, but also to see if Defendant has changed its practices and procedures. Plaintiff will continue to do so even if the Defendant has changed its practices and procedures. Absent remedial action by Defendant, Plaintiff will continue to encounter the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of her disabilities. The Eleventh Circuit, held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013) when barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store.*" Due to the definiteness of Plaintiff's future plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury.

91.  Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

92.  Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating hotel to make them readily accessible to, and useable by, individuals with disabilities who require the assistance of service animals to the extent required by the ADA, and to further order the Defendants to modify their policies, practices, and procedures, to make reasonable accommodations to individuals with disabilities.

**WHEREFORE**, premises considered, Carol McConnell demands judgment against Defendant on Counts One through Three and requests the following injunctive and declaratory relief:

[30]

1. That the Court declare that the property owned and business operated by the Defendant, as well as, all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order, in accordance with Count One, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

3. That the Court enter an order enjoining compliance with federal regulations and statutes as to Defendant's providing services that provide equality for individuals with disabilities that require the use of service animals, as well as, entering an order directing the Defendant to provide Plaintiff full and equal access both to the Defendant's experience and to the use of the Defendant's services it provides at its facility so that Plaintiff and others similarly situated are offered the same and equal experience that is offered to non-disabled individuals, as stated in Count Two;

4. That the Court declare Hampton Inn in violation of the Mississippi Act.

5. That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6. That the Court award reasonable attorney's fees, costs, (including expert fees)

and other expenses of suit, to Plaintiff; and

7.   That the Court award such other, further, and different relief as it deems

necessary, just, and proper.

Respectfully Submitted, this the 23rd Day of August, 2018.

/s/ _____
Bradley D. McAdory
MS Bar # 10545
Attorney for the Plaintiff
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Phone: 334.819.4030
Direct: 334.356.5314
Fax: 334.521.3859
BDM@ADA-Firm.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 23rd day of August, 2018 to the following:

**West Point Hotel Group, LLC**
**C/O Registered Agent**
**1003 Treetops Blvd**
**Flowood, MS 39232**

/s/_____
Bradley D. McAdory
MS Bar # 10545
Attorney for the Plaintiff
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Phone: 334.819.4030
Direct: 334.356.5314
Fax: 334.521.3859
BDM@ADA-Firm.com